UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PIERRE Q. PULLINS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:18-cv-03912-JMS-TAB |
| | ) |
| WAL-MART STORES EAST, LP, | ) |
| | ) |
| | ) |
| *Defendant*. | ) |

**ORDER**

*Pro se* Plaintiff Pierre Pullins alleges that his employer, Defendant Wal-Mart Stores East, LP ("Walmart"), retaliated against him by failing to select him for a position after he filed multiple charges with the Equal Employment Opportunity Commission ("EEOC"). Walmart has filed a Motion for Summary Judgment, [Filing No. 60], which is now ripe for the Court's decision.

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support

1

a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A. Mr. Pullins' Initial Employment With Walmart

Mr. Pullins began working at Walmart on May 2, 2016 as a Packer for the Walmart e-Commerce Fulfillment Center in Plainfield, Indiana (the "Fulfillment Center"). [Filing No. 60-1 at 10.] In late January 2017, Mr. Pullins applied for a position as a Receiver, management approved his request, and he began working as a Receiver on February 7, 2017. [Filing No. 60-1 at 19; Filing No. 60-1 at 65-66.]

### B. Walmart's Performance Tracking Policy

While a Walmart employee, Mr. Pullins was covered by Walmart's Performance Tracking Policy (the "Policy"). [Filing No. 60-1 at 29.] The Policy assists Walmart associates with improving their job performance and meeting Walmart's expectations, and also ensures that Walmart treats its associates consistently. [Filing No. 60-1 at 29; Filing No. 60-1 at 58-62.] The Policy is aimed at providing progressive accountability for performance failures. [Filing No. 60-1 at 29; Filing No. 60-1 at 58-62.] Performance issues are referred to as "occurrences," and associates receive a "disciplinary step" after receiving a certain number of occurrences. [Filing No. 60-1 at 29; Filing No. 60-1 at 58-62.]

Steps are active for 180 days from the effective date of the last step. [Filing No. 60-1 at 29; Filing No. 60-1 at 33; Filing No. 60-2 at 2.] If an associate has an active Step 2 discipline or

higher, he or she is not eligible to apply for or be considered for an internal job transfer or promotion. [Filing No. 60-1 at 30; Filing No. 60-1 at 64.] If an associate reaches Step 4, he or she is terminated. [Filing No. 60-1 at 29; Filing No. 60-1 at 58-62.]

### C.  Mr. Pullins' Disciplinary History

Effective March 8, 2017, Mr. Pullins received a Step 1 discipline as a result of unexcused absences on October 12, 2016; October 19, 2016; October 21, 2016; February 16, 2017; and March 8, 2017. [Filing No. 60-3 at 6-9.] Mr. Pullins had three further unexcused absences between March and June 2017, which resulted in him receiving a Step 2 discipline effective June 29, 2017. [Filing No. 60-1 at 33; Filing No. 60-2 at 2.]

### D.  Mr. Pullins' Picketing, Application for Financial Aid, and Denial of Interview for Employee Engagement Committee

In May 2017, Mr. Pullins applied for financial aid under Walmart's Associate in Critical Need Program ("ACNP"), an independent charity program that provides charitable grants to qualifying associates in need. [Filing No. 69-1 at 14.] Mr. Pullins' application was denied by the ACNP administrator because Mr. Pullins failed to submit additional documents that were requested for the decision. [Filing No. 69-1 at 14.]

On July 24, 2017, Mr. Pullins engaged in picketing at the Fulfillment Center. [Filing No. 69-1 at 13.] After the picket, Walmart flew in individuals from its headquarters to "assess the workplace climate." [Filing No. 69-1 at 14.]

Also in 2017, Mr. Pullins wanted to interview for Walmart's Employee Engagement Committee, but was not interviewed because he was not scheduled to work on the day that the interviews took place. [Filing No. 69-1 at 14.]

### E. Mr. Pullins' First EEOC Charge

On August 23, 2017, Mr. Pullins filed a Charge with the EEOC. [Filing No. 60-1 at 33; Filing No. 60-1 at 68-69.] In the EEOC Charge, Mr. Pullins alleged:

> I began working for [Walmart] on May 2, 2016. Starting on or about February 2, 2017, I have been subjected to discipline for alleged productivity issues in the performance of my job as a Receiving Associate. I have noticed that Walmart has shown preference toward employees that are of Burmese descent. Burmese employees don't receive the same subjective scrutiny for productivity as me or other African American employees. In one instance I know of a Burmese associate, with productivity issues, that was moved to another position to help retain his employment. White employees have also received the same favorable preference in treatment with respect to performance. I am currently at Step 2 in the performance point system and believe that I will soon be discharged for performance points. Employees of Burmese descent significantly outnumber black employees on all shifts. Burmese employees comprise the majority of employees in my department during second shift. I believe that the above actions have been taken against me due to my race and national origin, in violation of Title VII of the 1964 Civil Rights Act as amended.

[Filing No. 60-1 at 68.]

The EEOC dismissed the Charge on September 11, 2017. [Filing No. 60-1 at 34; Filing No. 60-1 at 34; Filing No. 60-1 at 70-73.] Because the EEOC Charge did not require any action by Walmart, neither the Charge nor the EEOC's dismissal of the Charge were sent to the Fulfillment Center where Mr. Pullins worked. [Filing No. 60-1 at 34; Filing No. 60-6 at 3.] Mr. Pullins never discussed the EEOC Charge with anyone at Walmart, nor did he ever complain of discrimination to anyone at Walmart. [Filing No. 60-1 at 28-29.]

### F. Mr. Pullins' National Labor Relations Board Charges

In 2016 and 2017, Mr. Pullins filed five charges with the National Labor Relations Board ("NLRB") related to his employment with Walmart. [Filing No. 69-1 at 6-7.] In the NLRB Charges, Mr. Pullins alleged as follows:

5

- September 9, 2016 Charge: Walmart "had discriminated against an employee by subjecting him to a drug test in retaliation for/and in order to discourage protected concerted activity." Mr. Pullins later withdrew the Charge;

- March 8, 2017 Charge: Walmart "discriminated against me by issuing me discipline in retaliation for providing evidence and giving testimony to the [NLRB]." The Charge was dismissed;

- June 5, 2017 Charge: "[S]ince about May 2, 2017, [Walmart] had discriminated against me for refusing to process my request under [Walmart's] emergency relief assistance fund and by issuing me an occurrence on June 2, 2017, because I had filed a previous charge against [Walmart] with the [NLRB]";

- June 23, 2017 Charge: "[O]n June 22, 2017, [Walmart] had discriminated against me for issuing me a documented productivity occurrence and denying my request under [Walmart's] emergency relief assistance fund because I had provided evidence and given testimony [related to a previous NLRB Charge]"; and

- June 29, 2017 Charge: "[O]n June 28, 2017, [Walmart] discriminated against me by interrogating me about [a previous NLRB Charge] and because I had provided evidence and given testimony to the Board…"

[Filing No. 69-1 at 6-7.] Mr. Pullins refused to provide evidence in support of three of his Charges, and they were dismissed. [Filing No. 69-1 at 7.]

### G. Walmart Posts the General Maintenance Associate Position

In September 2017, Walmart Maintenance Operations Manager Denver Wischmeier announced that the Maintenance Department would be launching an Apprenticeship Pilot Program to address the growing need to fill several General Maintenance Associate ("GMA") positions. [Filing No. 60-4 at 2-5; Filing No. 60-6 at 2-3.] The job posting for the GMA position provided the following description of a GMA's essential functions:

> Assist other maintenance technicians in the repair and maintenance of equipment. Clean and maintain grounds, parking lots, fencing and building facilities (e.g., bathrooms, plumbing). Communicate with (or to) individuals or groups verbally and/or in writing (e.g., customers, suppliers, associates). Complete work orders, records, logs and other written or computer-based documents according to established procedures. Operate material handling equipment battery equipment moving machinery, and other powered equipment.  Perform preventive

6

>  maintenance and repairs on equipment (e.g. lift trucks, pneumatic systems, material handling equipment, hydraulic equipment, dock equipment,…etc.) according to procedures. Troubleshoot basic problems with equipment where the repair is visible or obvious.

[Filing No. 60-1 at 67.] GMAs must have one year of experience in "repairing/maintaining mechanical or electrical equipment in an industrial or non-industrial setting OR two years related vocational training." [Filing No. 60-1 at 67.]

The Fulfillment Center where Mr. Pullins worked posted the GMA position, and interested associates were instructed to apply through Walmart's online computer requisition system and take a Maintenance Assessment Test ("MAT"). [Filing No. 60-4 at 2.] Mr. Wischmeier would then interview all associates, asking the same questions to determine if applicants had the necessary practical maintenance experience. [Filing No. 60-1 at 38; Filing No. 60-4 at 2.] Associates that passed the MAT and the interview would be offered a GMA position, and those that did not pass the MAT but passed the interview would be offered a position as a Maintenance Apprentice and be required to retake the MAT in six months. [Filing No. 60-4 at 2-3; Filing No. 60-6 at 2-3.] Associates who did not pass the interview would stay in their current position. [Filing No. 60-4 at 2-5; Filing No. 60-6 at 2-3.]

### H. Mr. Pullins Applies For a GMA or Maintenance Apprentice Position

In October 2017, Mr. Pullins expressed interest with the Human Resources Department in the GMA position or the Maintenance Apprentice position because he could not find the job posting in Walmart's computer hiring system.[1] [Filing No. 60-1 at 36.] A human resources

---

[1] Mr. Pullins contends that he thought he was applying for the Maintenance Apprentice position, but the evidence to which he cites – his "Confidential Witness Affidavit" – states that he "tried to apply for a Maintenance Technician position." [Filing No. 69-1 at 3.] Whether Mr. Pullins applied for the GMA position or the Maintenance Apprentice position is not relevant. He was not selected for either position. Mr. Pullins' contention that he intended to apply for the Maintenance

associate scheduled Mr. Pullins to take the MAT, but did not check first to see if Mr. Pullins had applied for the position or was even eligible to apply. [Filing No. 60-1 at 36-37.] At that time, Mr. Pullins had an active Step 2 discipline and, therefore, was ineligible to apply for any internal job transfers or promotions. [Filing No. 60-1 at 33; Filing No. 60-2 at 2; Filing No. 60-6 at 4.]

Mr. Pullins took the MAT and received a score of "Qualified." [Filing No. 60-5 at 2; Filing No. 60-6 at 3.] The human resources associate then scheduled Mr. Pullins for an interview with Mr. Wischmeier and Walmart Area Manager Jeff Wickershim for November 7, 2017. [Filing No. 60-1 at 37.] Because Mr. Pullins had received a "Qualified" score on the MAT, he was interviewed for the GMA position and not the Maintenance Apprentice position. [Filing No. 60-1 at 39; Filing No. 60-4 at 2; Filing No. 60-6 at 3.] In any event, the interview for the GMA position and the Maintenance Apprentice position was the same. [Filing No. 60-4 at 2; Filing No. 60-6 at 2-3.]

During the November 7, 2017 interview Mr. Wischmeier asked Mr. Pullins the following questions to determine whether Mr. Pullins had the necessary technical and mechanical experience for the GMA position:

- "Describe a time when you were given a difficult task by a supervisor, and how did you make sure you understood it";

- "Tell me about a situation when you noticed unclean or harmful working conditions or unsafe maintenance practices";

- "Tell me about a time when you had to follow established repair or preventative maintenance practices";

- "Describe a time when you were pressured to meet a short deadline to complete a difficult maintenance task and still work safely"; and

- "[T]ell [me] about a time you had to use your troubleshooting skills to improve equipment operation or return equipment to service."

---

Apprentice position is not supported by a citation to record evidence but, for purposes of the Motion for Summary Judgment, the Court will assume that Mr. Pullins applied for both positions.

[Filing No. 60-1 at 38.]  Mr. Pullins did not provide adequate responses to the questions, and admitted that he did not have any significant maintenance experience.  [Filing No. 60-1 at 39-40; Filing No. 60-6 at 3.]

### I. Mr. Pullins is Not Selected for the GMA Position

Mr. Wischmeier met with Mr. Pullins on January 10, 2018, and informed him that he was not selected for the GMA position because he did not provide sufficient examples of real-world practical maintenance experience during the interview.  [Filing No. 60-1 at 39; Filing No. 60-6 at 3.]  Mr. Pullins told Mr. Wischmeier that he could not provide examples of practical maintenance experience because he "didn't have any real-world maintenance experience."  [Filing No. 60-1 at 39.]  Mr. Pullins asked if he could take part in the apprenticeship program as a Maintenance Apprentice, and Mr. Wischmeier said that he could not because the apprenticeship program was for individuals who had the necessary experience but had failed the MAT.  [Filing No. 69-1 at 5.]  Mr. Wischmeier did not hire any associates who did not pass the interview for the GMA or Maintenance Apprentice positions.  [Filing No. 60-6 at 4.]  Two other associates who passed the MAT but failed the interview – like Mr. Pullins – were not selected for the GMA or Maintenance Apprentice positions.  [Filing No. 60-6 at 4.]

In February 2018, after Mr. Pullins' Step 2 discipline had expired, Mr. Pullins applied for and was offered a position as a part-time custodian.  [Filing No. 60-1 at 26-27.]  The custodian position was part of the Maintenance Department, and reported to Mr. Wischmeier.  [Filing No. 60-1 at 27.]  Mr. Pullins held the custodian position, and is currently a Packer at Walmart.  [Filing No. 60-1 at 28.]

9

### J. Mr. Pullins' Lawsuit

Mr. Pullins initiated this litigation on December 12, 2018, and sets forth the following allegations in his Complaint:

> [Walmart] discriminated against [Mr. Pullins] in retaliation for filing a prior EEOC charge and denied [Mr.] Pullins a maintenance position.
>
> [Mr.] Pullins, a current employee, tested for a maintenance position on November 1, 2017. [Mr.] Pullins passed the test and was then scheduled for an interview on November 8, 2017 with the Operations Maintenance Manager(s). [Mr.] Pullins interviewed and was told he'd hear something in about a week. [Mr.] Pullins wasn't told about the denial until Wednesday, January 10, 2018, forty-eight hours before he was scheduled to give an affidavit at the local [NLRB].... [Mr. Pullins] had filed a retaliation complaint with. (sic) [Mr.] Pullins also believes and alle[ ]ges that Walmart conspired with the EEOC and NLRB to undermine and defeat his retaliation claims.

[Filing No. 1 at 2-3.]

### III.
### DISCUSSION

The Court construes Mr. Pullins' Complaint as alleging two claims – retaliation in violation of Title VII, and civil conspiracy. [Filing No. 1; *see also* Filing No. 33 (Mr. Pullins setting out Title VII retaliation and civil conspiracy claims in his Statement of Claims).]² The Court addresses each claim in turn.

### A. Title VII Retaliation Claim

Walmart argues that Mr. Pullins' retaliation claim fails because he cannot establish that his protected activity – filing the EEOC Charge – was the cause of Walmart's decision not to hire him for the GMA position. [Filing No. 61 at 8.] Walmart asserts that Mr. Pullins has not presented any evidence that Mr. Wischmeier, the individual who decided not to hire Mr. Pullins for the GMA

---

² Mr. Pullins includes a section in his Statement of Claims titled "Other Legal Theories," and states that Walmart "Engaged In Obstruction of Justice." [Filing No. 33 at 3.] Obstruction of justice is not a civil claim, and the Court does not construe this as a viable claim asserted by Mr. Pullins.

position, knew that Mr. Pullins had filed an EEOC Charge. [Filing No. 61 at 8.] It contends that even if Mr. Pullins could show that Mr. Wischmeier knew about the EEOC Charge, his retaliation claim would still fail because Walmart has established a legitimate basis for not hiring Mr. Pullins for the GMA position: that he was not qualified. [Filing No. 61 at 9.] Walmart also notes that Mr. Pullins had an active Step 2 discipline at the time that he applied for the GMA position, so he was not permitted to apply for the position due to the Policy. [Filing No. 61 at 9-10.] Walmart notes that over four months passed between Mr. Pullins' filing of the EEOC Charge and his receiving notice that he was not selected for the GMA position. [Filing No. 61 at 10.]

In his response, Mr. Pullins acknowledges that he must establish that the decision not to hire him for the GMA position (or the Maintenance Apprentice position) was because he filed an EEOC Charge, but argues that Walmart intentionally waited until January 10, 2018 to inform him that he had not been selected and "[t]he timing conveniently allowed for the right to sue to lapse and put to enough distance…so a causal connection could not be established." [Filing No. 69 at 6.] Mr. Pullins states that he "does not concede that his Step 2 prevented him from being hired into the position," and that "absent a declaration from [Mr.] Wischmeier, a reasonable person could conclude that because there's no statement from [Mr.] Wischmeier supporting [Walmart's] position, then [Mr.] Pullins may be right that his complaint to the EEOC is the reason [he] didn't get into the program." [Filing No. 69 at 6-7.]

In its reply, Walmart reiterates its arguments that Mr. Pullins has not presented any evidence that Mr. Wischmeier (the decisionmaker) knew about Mr. Pullins' EEOC Charge and that, in any event, Mr. Pullins was not hired for the GMA position because he was not qualified and was on active Step 2 discipline at the time that he applied. [Filing No. 72 at 2-5.] Walmart

11

also argues that many of the statements in Mr. Pullins' "Statement of Material Facts" are not supported by citation to the record and should be disregarded and stricken. [Filing No. 72 at 11.]

At the outset, the Court notes that it has only included in its Statement of Facts, set forth above, facts for which the parties provided citations to the record. Accordingly, to the extent Mr. Pullins included statements in his "Statement of Material Facts in Dispute" that were not supported by citation to the record, the Court has disregarded them. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by…citing to particular parts of materials in the record….")

To succeed on a claim of retaliation, a party must "produce enough evidence for a reasonable jury to infer that [he] engaged in statutorily protected activity, that [defendant] took materially adverse action against [him], and that [his] protected activity caused the adverse action." *Reliford v. Advance/Newhouse P'ship*, 716 Fed. App'x 551, 553 (7th Cir. 2018). "An employee's complaints about workplace treatment are statutorily protected when they assert that the employer has committed prohibited discrimination." *Id.* To establish the required causal connection, a plaintiff must show that the defendant "would not have taken the adverse…action but for the employee's protected activity." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (alterations in original) (quoting *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999)).

The principal deficiency with Mr. Pullins' retaliation claim is that he has not presented any evidence that Mr. Wischmeier – who was the decisionmaker for whether Mr. Pullins was hired for the GMA or Maintenance Apprentice positions – was aware that Mr. Pullins had filed an EEOC

Charge or, to the extent Mr. Pullins bases his retaliation claim on them, the NLRB Charges.[3] Mr. Pullins mentions that his immediate supervisor was Jason Lumpford, [Filing No. 69-1 at 2], but does not present any evidence that Mr. Lumpford, and not Mr. Wischmeier, made the decision whether to hire Mr. Pullins for the GMA or Maintenance Apprentice positions. It is Mr. Pullins' burden to provide evidence on summary judgment that Walmart declined to hire him for the GMA or Maintenance Apprentice positions because of the EEOC Charge or the NLRB Charges. *Baines, 863 F.3d at 661* ("To survive summary judgment on [a] retaliation claim, [plaintiff must] offer evidence of…a causal connection between" the protected activity and the adverse employment action). Mr. Pullins has not presented any such evidence.

Additionally, although Mr. Pullins may "supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination," *Greengrass v. Internat'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015), he has not produced such circumstantial evidence either. His vague allegations that "upper management" knew of his EEOC Charge (or his NLRB Charges) due to his participation in picketing in June or July of 2017 are unavailing. They are purely speculative and, in any event, the picketing took place before Mr. Pullins filed his EEOC Charge.

Contrary to Mr. Pullins' unsupported allegations, the evidence shows that Walmart declined to offer Mr. Pullins the GMA or Maintenance Apprentice positions for two non-retaliatory reasons – he was not qualified based on his responses to the interview questions, and he was on active Step 2 discipline when he applied (which disqualified him based on the Policy). There simply is no evidence that Mr. Pullins was denied the GMA or Maintenance Apprentice

---

[3] Walmart argues that the NLRB Charges are not "protected activity" under Title VII. [Filing No. 72 at 6.] The Court need not decide whether that is the case, as Mr. Pullins has not met his burden of proving that Mr. Wischmeier was aware of the NLRB Charges in any event.

positions because he filed the EEOC Charge or the NLRB Charges. Accordingly, Mr. Pullins' retaliation claim fails as a matter of law and the Court **GRANTS** Walmart's Motion for Summary Judgment on that claim.[4]

### B. Civil Conspiracy Claim

Mr. Pullins alleges in his Complaint that Walmart "conspired with the EEOC and NLRB to undermine and defeat his retaliation claims." [Filing No. 1 at 3.] In his Statement of Claims, Mr. Pullins states that Walmart waited 60 days to inform him that he had not been selected as a Maintenance Apprentice and did so 48 hours before he was to give a sworn affidavit to the NLRB. [Filing No. 33 at 2.] He states that:

> [i]t appears that [Walmart] and the local [NLRB] worked together to keep [him] from giving an affidavit where [he] would be able to say he was not told, at the time of the affidavit, about the status of the job. In other words, [Walmart] was most likely alerted to inform [him] about the denial of the position before [he] arrived to give his affidavit… The EEOC issued a no-cause finding before the deadline it gave [him] to respond to [Walmart's] position statement…. The actions by the above mentioned federal agencies worked to help [Walmart] and at the expense of [Mr. Pullins].

[Filing No. 33 at 2-3.]

Walmart treats Mr. Pullins' conspiracy allegations as an attempt to establish pretext in connection with his retaliation claim, and argues again that Mr. Pullins has not produced any evidence that Mr. Wischmeier was even aware of the EEOC Charge or of Mr. Pullins' intention to submit an affidavit to the NLRB. [Filing No. 61 at 10.]

---

[4] Mr. Pullins states in his response to Walmart's Motion for Summary Judgment that "[w]hether Walmart destroyed [his] discovery requests in relation to the Company 'Gap Time Policy'" is a genuine issue of material fact that precludes summary judgment. [Filing No. 69 at 5.] As the Court found in connection with Mr. Pullins' Objections, it appears that Walmart has produced those documents and, in any event, Mr. Pullins has not explained what significance, if any, these documents have to this litigation.

In his response, Mr. Pullins simply contends that there is a genuine issue of material fact regarding "[w]hether Walmart's 'arrangement' with the EEOC to serve Walmart's outside counsel with [Mr. Pullins'] charge constitutes a conspiracy to help protect Walmart from retaliation claims." [Filing No. 69 at 5.]

In its reply, Walmart "admits that its practice was for EEOC charges to be served directly on Walmart's designated outside counsel" and argues that there is nothing improper about this practice and that because charges went directly to outside counsel, "neither [Mr.] Wischmeier nor anyone else at the Fulfillment Center had notice of [the] EEOC charge." [Filing No. 72 at 5.] Walmart notes that Mr. Pullins admitted in his deposition that he has no evidence supporting his conspiracy theory. [Filing No. 72 at 5.]

42 U.S.C. § 1985 provides a conspiracy claim for a plaintiff who can establish: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000). To satisfy the second element, a plaintiff must allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id.* (citation and quotation omitted). Such animus includes "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Id.* (citation and quotation omitted).

As discussed above, Mr. Pullins has not presented any evidence that Mr. Wischmeier was aware of the EEOC Charge or the NLRB Charges. Because Mr. Wischmeier was the decisionmaker regarding whether Mr. Pullins was selected for the GMA or Maintenance Apprentice positions, this lack of evidence is fatal to any civil conspiracy claim. Walmart cannot

have conspired with the EEOC or the NLRB when Mr. Wischmeier did not even know of the EEOC Charge or the NLRB Charges. The Court **GRANTS** Walmart's Motion for Summary Judgment on Mr. Pullins' civil conspiracy claim.

## IV.
### CONCLUSION

For the foregoing reasons, Walmart's Motion for Summary Judgment, [60], is **GRANTED**. Final judgment shall enter accordingly.

Date: 5/12/2020

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via United States Mail to:**

Pierre Q. Pullins
6120 Westlake Drive N.
Apt. B
Indianapolis, IN 46224

**Distribution via ECF only to all counsel of record**